**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| | : | |
| ELOISA GOMEZ TELKAMP | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:15-CV-726 (JCH) |
| | : | |
|     v. | : | |
| | : | |
| VITAS HEALTHCARE CORP. | : | |
| ATLANTIC et al., | : | FEBRUARY 29, 2016 |
|     Defendants. | : | |

**RULING RE: DEFENDANTS' MOTIONS TO DISMISS (DOC. NOS. 35, 37, 52, 63, 67, 70 & 79), PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL (DOC. NO. 49), AND PLAINTIFF'S MOTIONS TO FILE SUR-REPLY BRIEFS (DOC. NOS. 78 & 87)**

## I. INTRODUCTION

This is an action filed by plaintiff Eloisa Gomez Telkamp ("Telkamp") against eighteen defendants. See Am. Compl. (Doc. No. 17). Telkamp's forty-two count Amended Complaint alleges that these defendants violated her rights in various ways when they participated in the removal of Telkamp from her terminally ill daughter's hospice room and subsequently hospitalized Telkamp against her will and without legal justification. See id. Sixteen of the named defendants[1] have filed Motions to Dismiss that are pending before the court. See Mot. to Dismiss (Doc. No. 35); Mot. to Dismiss (Doc. No. 37); Mot. to Dismiss (Doc. No. 52); Defs.' Mot. to Dismiss (Doc. No. 63); Mot. to Dismiss of Defs. Genesis HealthCare, LLC, Gail Ward Curland, Tamara Martin-Linnard, and Erin Dunning Pursuant to Rule 12(b), F.R.Civ.P. (Doc. No. 67); Ashley Creswell's Mot. to Dismiss (Doc. No. 70); Mot. to Dismiss on Behalf of Defs. Vitas

---

[1] The two defendants who have not filed motions to dismiss are Michael McCarthy ("McCarthy") and Christopher Banks ("Banks"), both police officers. See Am. Compl. at 3 (Doc. No. 17). McCarthy and Banks filed an Answer to the Amended Complaint on September 2, 2015. See Answer to the Am. Compl. and Affirm. Defenses ("Banks and McCarthy Answer") (Doc. No. 50).

Healthcare Corp. Atlantic and Kim Trowbridge (Doc. No. 79).  In addition, Telkamp has

filed two Motions for Leave to File Sur-Reply Briefs (Doc. Nos. 78 & 87) and a Motion

for Appointment of Counsel (Doc. No. 49).  The court will take up all of the pending

Motions in this Ruling.

## II.   FACTS[2]

Telkamp is a resident of the state of Texas who, at the time of the events giving

rise to this lawsuit, was in Connecticut to care for her terminally ill daughter.  See Am.

Compl. at 5 ¶ 28 (Doc. No. 17).  Shortly after Telkamp's arrival in Connecticut, her

daughter informed Telkamp that she wished to exit hospice care, which she was

receiving as a Vitas Innovative Hospice Care patient in residence at the Groton

Regency Center.  See id.  Telkamp informed defendant Kim Trowbridge ("Trowbridge"),

the Vitas Team Leader, of her daughter's decision.  See id. at 6 ¶ 30.  The documents

necessary to remove her daughter from hospice care were prepared, but not executed,

because Trowbridge told Telkamp that a notary would not be available until the

following Monday.  See id.  After the documents were prepared but before a notary

would be made available, Telkamp's daughter appeared to enter the "active dying"

phase.  See id. at 6 ¶ 31.  However, by the following Wednesday, Telkamp's daughter

---

[2] Some of the defendants' Motions to Dismiss are Motions pursuant to Rule 12(b)(6).  For
purposes of these Motions, the court accepts as true all well-pled facts alleged in the Amended Complaint
and draws all reasonable inferences in the plaintiff's favor.  Crawford v. Cuomo, 796 F.3d 252, 256 (2d.
Cir. 2015).  The court accordingly derives the following description of the facts of this case from the
Amended Complaint.  The facts described herein are limited to those necessary to decide the pending
Motions.

The court may also consider documents attached to or incorporated by reference in the Amended
Complaint.  See Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) ("On a motion to
dismiss, the court may consider any written instrument attached to the complaint as an exhibit or any
statements or documents incorporated in it by reference." (internal quotations, alterations, and citation
omitted)).  Telkamp attached six Exhibits to her Amended Complaint, see Am. Compl. at 34-47 (Doc. No.
17), which the court will consider for purposes of assessing the pending Motions in this case.

appeared to recover, and Telkamp again sought the services of a notary.  See id. at 8 ¶ 34.  At that time, and contrary to her prior representations, Trowbridge indicated that Vitas would not be providing legal services for Telkamp and that Telkamp needed to secure the services of a notary on her own.  See id.  Telkamp was removed from the hospice's premises before she had the opportunity to locate a notary and execute the healthcare documents per her daughter's wishes.  See id. at 8 ¶ 35.

During the period that Telkamp's daughter appeared to be actively dying, Telkamp stayed in her daughter's hospice room.  See id. at 7 ¶ 32-33.  Defendants Trowbridge, Tamara Martin-Linnard ("Martin-Linnard"), and Erin Dunning ("Dunning") refused to provide Telkamp with overnight accommodations in the hospice facility and accused Telkamp of trespass for remaining in her daughter's hospice room overnight. See id. at 7 ¶¶ 32-33, 8 ¶ 36.  On June 20, 2013, the day following Telkamp's renewed request for the services of a notary, these defendants called the police.  See id. at 8 ¶ 36.  The officers who responded, defendants Banks and McCarthy, attempted to speak with Telkamp, but she refused to answer questions.  See id. at 9 ¶¶ 37-38.  Banks and McCarthy ultimately issued Telkamp a ticket for creating a public disturbance and called an ambulance to transport her to a medical facility.  See id.  Although the police officers alleged that the reason for the transport was that Telkamp was intoxicated, she maintains that she was not intoxicated and did not consent to being transported by ambulance.  See id. at 9 ¶ 38, 11 ¶ 44.  Thus, Telkamp's transport from her daughter's hospice room to defendant Lawrence & Memorial Hospital, Inc. ("L+M Hospital"), accomplished by defendants Groton Ambulance Association, Inc. ("Groton

Ambulance"), Paula Edwards ("Edwards"), and Chester Kaniecki ("Kaniecki"), was against Telkamp's will and without legal justification.  See id. at 10 ¶¶ 39-41.

Once at L+M Hospital, Telkamp was evaluated by defendants Kristy Davenport ("Davenport") and Ashley Creswell ("Creswell").  See id. at 14 ¶ 49, 15 ¶ 51.  Both Davenport and Creswell refused to let Telkamp leave L+M Hospital and informed Telkamp that she would be tied to her bed if she tried to exit the facility.  See id. at 15 ¶¶ 50-51.  Both Davenport and Creswell recorded various statements about the events that led Telkamp to be admitted to L+M Hospital, including the allegation that Telkamp was intoxicated and had been fighting with staff at the Groton Regency.  See id.

At 2:00 AM on June 21, 2013, Telkamp wished to call her daughter and was not permitted to do so.  See id. at 16 ¶ 53.  She became upset, at which point she was involuntarily medicated by defendant Melissa Monte ("Monte").  See id. at 16 ¶ 53-55.  Later that same day, defendant Deirdre Cronin-Vorih ("Cronin-Vorih") diagnosed Telkamp with alcoholism and recorded her diagnosis in Telkamp's medical chart.  See id. at 19 ¶ 60.  Cronin-Vorih also referred Telkamp to crisis intervention services for an Emergency/Psychosocial Assessment, which was performed by defendant Laina Braasch ("Braasch").  See id. at 20 ¶ 65.  In her assessment, Braasch recorded the allegations of intoxication and assaultive behavior that were reported by hospice staff. See id. at 20 ¶ 66.  Braasch also warned Telkamp that, if she returned to the Groton Regency, she would be arrested.  See id.

Defendant Vittorio Ferrero ("Ferrero") also reviewed Telkamp's case as part of the crisis intervention services.  See id. at 21 ¶ 67.  Like Braasch, Ferrero recorded allegations of intoxication and assaultive behavior in his report.  See id.  He also stated

4

that Telkamp "had a blackout about what happened the past two days," which Telkamp denies.  See id.

Telkamp was not permitted to return to her daughter's hospice room.  See id. at 23 ¶ 71.  Telkamp's removal from her daughter's bedside caused her daughter to progress from being "a sociable communicative person to a sad non-communicative person."  Id.  During the period following Telkamp's removal, her daughter kept asking "Where's my mama?" and "What happened to my mama?"  Id.  Her daughter died on July 10, 2013, without Telkamp there to comfort her during the dying process.  See id.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014).  Where jurisdictional facts are in dispute, the court has the power to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.  Id.  The burden is on the plaintiffs to establish jurisdiction.  Renne v. Geary, 501 U.S. 312, 316 (1991); see also Tandon, 752 F.3d at 243.

A motion to dismiss pursuant to Rule 12(b)(1) is "the proper procedural route" to bring a challenge to a plaintiff's Article III standing to adjudicate a claim.  Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006).

B.    Rule 12(b)(5)

Pursuant to Federal Rule of Civil Procedure 4, an individual may properly be served either by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," or by doing any of the following: "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e). A corporation, partnership, or association may also be served pursuant to state law, or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B).

Connecticut law provides that "process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." C.G.S.A. § 52-57(a). Connecticut law also provides specific requirements regarding who in a private corporation, partnership, and voluntary association may receive service on the organization's behalf. See C.G.S.A. § 52-57(c)-(d). Neither Connecticut law nor the Federal Rules provide for service by mail.

When a plaintiff fails to effect proper service upon a defendant and the defendant does not waive service of process pursuant to Rule 4(d), the plaintiff's action may be

subject to dismissal pursuant to Rule 12(b)(5).  "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient."  <u>Khan v. Khan</u>, 360 F. App'x 202, 203 (2d Cir. 2010).

      C.     <u>Rule 12(b)(6)</u>

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court properly considers the complaint and, by extension from and in addition to the complaint, "documents plaintiffs had either in [their] possession or had knowledge of and upon which they relied in bringing suit."  <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991).  The court takes all of "the factual allegations of the complaint to be true and draw[s] all reasonable inferences in the plaintiff's favor."  <u>Warren v. Colvin</u>, 744 F.3d 841, 843 (2d Cir. 2014).  Dismissal of a claim is appropriate if, despite this favorable reading, the complaint fails to allege "enough facts to state a claim for relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007).  The requirement to allege "facts" means that "bald assertions" and "merely conclusory allegations" do not suffice.  <u>Jackson v. Cnty. of Rockland</u>, 450 F. App'x 15, 19 (2d Cir. 2011); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  A complaint is "plausible on its face" if the facts that the plaintiff pleads "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.  That is, the complaint must raise "more than a sheer possibility that a defendant has acted unlawfully" and must also do more than "plead facts that are 'merely consistent with' a defendant's liability."  <u>Id.</u>  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u> at 679.

7

D.   Frivolity

In addition to the grounds for dismissal in Rule 12 of the Federal Rules of Civil Procedure articulated above, the court is empowered to dismiss frivolous actions, regardless of whether the plaintiff is proceeding in forma pauperis or has paid the filing fee.  See Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (holding that "district courts may dismiss a frivolous complaint sua sponte even when the plaintiff has paid the required filing fee").  An action is frivolous when "either (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy, or (2) the claim is based on an indisputably meritless legal theory."  Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998).

E.   Pro Se Plaintiffs

Pleadings filed by pro se plaintiffs, "however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers."  Hughes v. Rowe, 449 U.S. 5, 9 (1980) (internal quotations and citation omitted).  The policy of "liberally construing pro se submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training."  Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotations, alterations, and citation omitted).  In sum, pro se litigants are entitled to "special solicitude," Ruotolo v. I.R.S., 28 F.3d 6, 8 (2d Cir. 1994), which includes interpreting the submissions of a pro se plaintiff "to raise the strongest arguments that they suggest," Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotations and citation omitted).

8

**IV.    DISCUSSION**

As a preliminary matter, the court will consider Telkamp's Motions for Leave to File Sur-Reply Briefs.  <u>See</u> Pl.'s Mot. for Leave to File a Sur-Reply Br. (Doc. No. 78); Pl.'s Sur-Reply Brief in Opp. to Mot. to Dismiss on Behalf of Defs. Vitas Healthcare Corp., Atlantic & Kim Trowbridge (Doc. No. 87).  In her first Motion (Doc. No. 78), Telkamp states that she seeks leave to file a sur-reply brief in order to "coherently address the issues raised" by the defendants in their assorted filings.  <u>Id.</u> at 1.  The court appreciates Telkamp's efforts at clarity and therefore grants both of her Motions for Leave to File Sur-Reply Briefs (Doc. Nos. 78 & 87).  The court has reviewed the briefs attached to Telkamp's Motions, and will consider the arguments raised therein in the ensuing discussion sections of this Ruling.

The court will now turn to an analysis of the arguments raised in the various Motions presently pending before the court.  The following discussion will proceed by analyzing the claims of defendants who have moved to dismiss the Amended Complaint on the grounds that it is frivolous, followed by the claims of defendants who have moved to dismiss pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6).  Finally, the court will consider Telkamp's pending Motion for Appointment of Counsel (Doc. No. 49).

A.    <u>Frivolity</u>

Several of the defendants have moved to dismiss Telkamp's Amended Complaint on the grounds that the claims stated therein are frivolous.  <u>See</u> Mot. to Dismiss of Defs. Genesis HealthCare, LLC, Gail Ward Curland, Tamara Martin-Linnard, and Erin Dunning Pursuant to Rule 12(b), F.R.Civ.P. at 2 (Doc. No. 67); Mot. to Dismiss on Behalf of Defs. Vitas Healthcare Corp. Atlantic and Kim Trowbridge (Doc. No. 79).

9

After careful review of Telkamp's filings and the arguments put forward by counsel for the defendants, the court concludes that Telkamp's claims are neither "clearly baseless, such as when allegations are the product of delusion or fantasy" nor "based on an indisputably meritless legal theory." Livingston, 141 F.3d at 437. Therefore, dismissal on the basis of frivolity is not warranted, and defendants' Motions to Dismiss on these grounds are denied.

B.    Rule 12(b)(1)

Several of the defendants have also moved to dismiss the Amended Complaint pursuant to Rule 12(b)(1). Most, but not all, of the Rule 12(b)(1) arguments raised by the defendants relate to defendants' contention that Telkamp's Amended Complaint alleges several claims on behalf of her deceased daughter, even though Telkamp has not established that she has standing to bring such claims on her daughter's behalf.[3] See Mot. to Dismiss on Behalf of Defs. Vitas Healthcare Corp. Atlantic and Kim Trowbridge at 1 (Doc. No. 79). Separately, defendants Groton Ambulance, Edwards, and Kaniecki allege that the court lacks subject matter jurisdiction over the claims against them because Telkamp "fails to allege any recognizable federal cause of action against the undersigned Defendants or allege plausible facts to support her claims." Defs.' Mot. to Dismiss at 2 (Doc. No. 63). The court will consider these Rule 12(b)(1) arguments in turn.

---

[3] One Motion to Dismiss sets forth this standing argument as grounds for dismissal pursuant to Rule 12(b)(6). See Mot. to Dismiss of Defs. Genesis HealthCare, LLC, Gail Ward Curland, Tamara Martin-Linnard, and Erin Dunning Pursuant to Rule 12(b), F.R.Civ.P. at 2 (Doc. No. 67). However, the Second Circuit has explicitly said that the proper procedural vehicle for a challenge to a plaintiff's Article III standing is a motion to dismiss pursuant to Rule 12(b)(1), see Alliance for Environmental Renewal, Inc., 436 F.3d at 88 n.6, and the court will consider it as such.

      1.      Standing

Several defendants have moved to dismiss portions of the Amended Complaint on the grounds that the Amended Complaint includes claims on behalf of Telkamp's daughter and Telkamp lacks standing to bring these claims. See Mem. of Law in Supp. of Mot. to Dismiss on Behalf of Defs. Vitas Healthcare Corp. Atlantic and Kim Trowbridge at 5-6 (Doc. No. 79-1). Although the Amended Complaint is not entirely clear, portions of that pleading do suggest that Telkamp intended to bring claims on behalf of her deceased daughter. See Am. Compl. at 2 ¶ 2 (Doc. No. 17) (stating that "Plaintiff is also filing this lawsuit because her banishment was a violation of her daughter's rights"); see id. at 25 ¶ 76 ("The breach of the contract with me also breached the contract with my daughter and ruined her 'quality of life.'"). However, because Telkamp is a pro se litigant, she cannot assert claims on behalf of other individuals. See Singleton v. Wulff, 428 U.S. 106, 114 (1976) ("'Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party.'" (citations omitted)); Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 58 (2d Cir. 1994) (standing requires that plaintiff "assert[ ] its own legal rights, and not those of a third party"). To the extent that any portion of Telkamp's Amended Complaint can be construed as asserting a claim on behalf of Telkamp's deceased daughter, that portion of the Amended Complaint is dismissed pursuant to Rule 12(b)(1).

      2.      Subject Matter Jurisdiction

Defendants Groton Ambulance, Edwards, and Kaniecki have also moved to dismiss the Amended Complaint pursuant to Rule 12(b)(1) on the ground that the court lacks subject matter jurisdiction over Telkamp's claims. See Mem. of Law in Supp. of

11

Defs.' Mot. to Dismiss at 19-20 (Doc. No. 63-1).  Specifically, these defendants argue that "the Plaintiff either fails to allege any recognizable federal cause of action against the undersigned Defendants or allege plausible facts to support her claims."  See id.

The Amended Complaint alleges that the court has jurisdiction pursuant to section 1983 of title 42 of the United States Code and section 1367 of title 28 of the United States Code, among others.[4]  In other words, Telkamp has alleged that the court has original jurisdiction over some of her claims stemming from section 1983 and the United States Constitution, and supplemental jurisdiction over her remaining claims pursuant to section 1367.  With respect to Telkamp's section 1983 claims, the court notes that the two defendants named in Telkamp's Amended Complaint who are most plausibly state actors, and therefore most clearly subject to liability pursuant to section 1983 if Telkamp's allegations against them are proven, have not moved to dismiss the Amended Complaint.[5]  Thus, portions of Telkamp's Amended Complaint that clearly allege claims pursuant to section 1983 survive this Ruling, and the court therefore has original jurisdiction over some of Telkamp's claims.  See 42 U.S.C. § 1983.  Given the extensive factual overlap between these federal claims and Telkamp's state law claims that survive this Ruling, the court views the surviving state law claims as "so related to claims in the action within . . . original jurisdiction" that these claims "form part of the

_____

[4] The Amended Complaint also alleges the court has jurisdiction "pursuant to 28 U.S.C. Section 1843(a)(3)."  Am. Compl. at 2 ¶ 4 (Doc. No. 17).  This appears to be a mistake, as the court is unable to locate any statutory language at that citation.  Telkamp may have intended to refer to section 1343 of title 28 of the United States Code, which endows the court with "original jurisdiction of any civil action authorized by law to be commenced by any person . . . [t]o redress the deprivation, under color of [state law], of any right, privilege, or immunity secured by" federal law.  28 U.S.C. § 1343(a)(3).  However, Telkamp's drafting mistake—assuming it is a mistake—is not important for purposes of the present Ruling, as the court has jurisdiction over Telkamp's claims pursuant to the other statutory sections she cites.

[5] Those defendants are police officers McCarthy and Banks.

same case or controversy under Article III of the United States Constitution," even though the state law claims "involve the joinder . . . of additional parties."  28 U.S.C. § 1367(a).  Thus, the court will, for now, continue to exercise supplemental jurisdiction over Telkamp's state claims.  Because the court has subject matter jurisdiction over Telkamp's claims against Groton Ambulance, Edwards, and Kaniecki under section 1367 of title 28 of the United States Code, these defendants' Motion to Dismiss pursuant to Rule 12(b)(1) is denied.

      C.    <u>Rule 12(b)(5)</u>

Multiple defendants have moved for dismissal pursuant to Rule 12(b)(5).  <u>See</u> Mot. to Dismiss ("Ferrero MTD") (Doc. No. 52); Mot. to Dismiss of Defs. Genesis Healthcare, LLC, Gail Ward Curland, Tamara Martin-Linnard, and Erin Dunning Pursuant to Rule 12(b), F.R.Civ.P. ("Genesis Defendants MTD") (Doc. No. 67).  Each of these defendants has submitted an Affidavit in support of their contention that they were not properly served.  <u>See</u> Affidavit of Vittorio Ferrero, M.D. in Support of Motion to Dismiss ("Ferrero Aff.") (Doc. No. 53-1); Affidavit of Tamara Martin-Linnard ("Martin-Linnard Aff.") (Doc. No. 67-2); Affidavit of Gail Ward Curland ("Curland Aff.") (Doc. No. 67-3); Affidavit of Erin Carver ("Carver Aff.") (Doc. No. 67-4); Affidavit of Susan M. Overton, Esq. ("Overton Aff.") (Doc. No. 67-5).

In responding to defendants' Rule 12(b)(5) Motions and supporting Affidavits, Telkamp bears the burden of establishing that service was sufficient.  <u>See</u> <u>Khan</u>, 360 F. App'x at 203.  The court will discuss each defendant separately.

1.    Vittorio Ferrero, M.D.

Defendant Ferrero filed an Affidavit attesting that, although he received a copy of the Amended Complaint (Doc. No. 17) in the mail, copies of the Summons and Complaint in this matter have never been served on him pursuant to any of the methods outlined by Rule 4(e) or C.G.S.A. § 52-57(a).  Ferrero Aff. at 2 (Doc. No. 53-1).  Ferrero also did not file a waiver of service in this matter.  In response to Ferrero's Affidavit asserting that he was not sufficiently served, Telkamp has neither alleged nor offered evidence in the form of an Affidavit from a process server that she properly served Ferrero; instead, Telkamp argues that, because an attorney appeared on Ferrero's behalf on August 10, 2015, Ferrero "waived service of process and thus this Court has personal jurisdiction over Dr. Ferrero."  Mem. of Law in Opp. to Mot. to Dismiss at 2 (Doc. No. 61).  However, it is a well-settled principle of law in this Circuit that merely appearing before the court does not waive the defense of insufficient service of process. See Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir. 1972) ("The need to file a special appearance in order to object to jurisdiction or venue has vanished.  A party can file a general appearance and object to personal jurisdiction or venue at any time before the answer is filed or in the answer.").  Ferrero properly raised the insufficiency of service against him in his Motion to Dismiss, and therefore he has not waived this defense.  Because Telkamp has failed to offer any evidence that Ferrero was properly served, she has failed to carry her burden of establishing sufficient service with respect to defendant Ferrero.  Ferrero's Rule 12(b)(5) Motion to Dismiss (Doc. No. 52) is granted.

14

2.      Tamara Martin-Linnard

Defendant Martin-Linnard also filed an Affidavit attesting that she was not served

with the Complaint or Amended Complaint "in hand."  Martin-Linnard Aff. at 2 (Doc. No.

67-2).  However, Martin-Linnard states that "[a] copy of the Amended Complaint was

given to [her] husband by an unknown individual."  Id.  Martin-Linnard also notes that

she "maintain[s] [her] usual place of abode in New London, Connecticut."  Id.  On its

face, this Affidavit is insufficient to establish that Martin-Linnard was not properly

served, as the Affidavit allows for the possibility that service was accomplished at

Martin-Linnard's "usual place of abode with someone of suitable age and discretion who

resides there," i.e., Martin-Linnard's husband.  Fed. R. Civ. P. 4(e)(2)(B).

The facial inadequacy of Martin-Linnard's Affidavit is more than an academic

concern, because a Return of Service docketed after the filing of Martin-Linnard's

Motion to Dismiss and supporting Affidavit indicates that Terrance Perry of Connecticut

Process Serving, LLC left a copy of the Summons and Amended Complaint for Martin-

Linnard with "Michael Linnard, Spouse" at an address in New London, Connecticut.

See Return of Service (Doc. No. 72).[6]  Although the Return of Service does not

definitively establish that Martin-Linnard was properly served—for example, it does not

---------------------------------------

[6] Under the Federal Rules of Civil Procedure operative at the time Telkamp initiated this lawsuit, a
plaintiff was required to serve defendants "within 120 days after the complaint is filed."  Fed. R. Civ. P.
4(m).  Telkamp filed the original Complaint in this lawsuit on May 14, 2015, see Compl. (Doc. No. 1),
which means she was required to effect service on the defendants by mid-September 2015.  However,
the Return of Service for Martin-Linnard indicates that copies of the Summons and Amended Complaint
were not left with Michael Linnard at the New London, Connecticut address until September 28, 2015.
See Return of Service (Doc. No. 72).  Although this means that the service of Martin-Linnard may have
been untimely, Martin-Linnard does not appear to have raised the timeliness of service in her Motion to
Dismiss (Doc. No. 67).
        If the service on Martin-Linnard on September 28, 2015, was otherwise effective, that service was
only untimely by a few days.  Furthermore, because Telkamp is pro se and resides out-of-state, the court
finds that an extension of time for service in this case is warranted.  Thus, the court grants an extension
of time nunc pro tunc to September 28, 2015 for service of Martin-Linnard in this matter.

state that the address in New London, Connecticut where the server left copies of the
Summons and Amended Complaint is actually Martin-Linnard's abode—when combined
with the facial inadequacy of Martin-Linnard's Affidavit, the Return of Service is
sufficient to carry Telkamp's burden of establishing proper service pursuant to Rule
4(e)(2)(B) at this juncture.  The court will not dismiss the counts against Martin-Linnard
on the grounds that she was not properly served.  The court notes, however, that this
decision is without prejudice to Martin-Linnard filing a subsequent Rule 12(b)(5) Motion
if she can allege that the New London address was not her abode at the time of service
or that service by delivery to Michael Linnard at that address was insufficient for some
other reason.

> 3.    Gail Ward Curland

Defendant Curland filed an Affidavit attesting that she was not served with the
Summons and Amended Complaint "in hand or at [her] usual place of abode."  Curland
Aff. at 2 (Doc. No. 67-3).  Curland acknowledges that she received a copy of the
Complaint in the mail, and a copy of the Amended Complaint from the receptionist at
her place of employment.  See id.  However, Curland attests that she has not
designated her employer's receptionist as her agent.  See id.

Telkamp does not appear to address Curland's contention that she was
insufficiently served in her Opposition to Curland's Motion to Dismiss, see Mem. of Law
in Opp. to the Mot. to Dismiss of Defs. Genesis HealthCare, LLC, Gail Ward Curland,
Tamara Martin-Linnard, and Erin Dunning Pursuant to Rule 12(b), F.R.Civ.P. (Doc. No.
71); see also Pl.'s Sur-Reply Br. in Opp. to Genesis HealthCare, LLC, Gail Ward
Curland, Tamara Martin-Linnard and Erin Dunning's Mot. to Dismiss (Doc. No. 78-1),

but a Return of Service docketed after Curland filed her Motion to Dismiss and supporting Affidavit indicates that Terrance Perry of Connecticut Process Serving, LLC left a copy of the Summons and Amended Complaint for Curland with a receptionist at Groton Regency on September 1, 2015.  See Return of Service (Doc. No. 73).

Because Curland attests that she has not appointed the receptionist at Groton Regency as her agent, and because Telkamp has failed to produce any evidence that would either contradict Curland's sworn statement or establish that Curland was otherwise served in accordance with Rule 4(e) or Connecticut law, Telkamp has failed to carry her burden of establishing that she sufficiently served Curland.  Curland's Rule 12(b)(5) Motion to Dismiss (Doc. No. 67) is granted.

4.    Erin Dunning

Defendant Erin Carver (née Dunning) ("Dunning")[7] filed an Affidavit attesting that she has never been served "in hand or at [her] usual place of abode."  Carver Aff. at 2 (Doc. No. 67-4).  Telkamp does not appear to address Dunning's contention that she was not properly served in her Opposition to Dunning's Motion to Dismiss, and she has not submitted an Affidavit or other evidence that shows she caused Dunning to be properly served.  See Mem. of Law in Opp. to the Mot. to Dismiss of Defs. Genesis HealthCare, LLC, Gail Ward Curland, Tamara Martin-Linnard, and Erin Dunning Pursuant to Rule 12(b), F.R.Civ.P. (Doc. No. 71); see also Pl.'s Sur-Reply Br. in Opp. to Genesis HealthCare, LLC, Gail Ward Curland, Tamara Martin-Linnard and Erin Dunning's Motion to Dismiss (Doc. No. 78-1).  Furthermore, no Return of Service has

---

[7] Because she is identified by her maiden name in the Amended Complaint, for ease of reference the court will refer to Erin Dunning by her maiden name throughout this Ruling.

17

been docketed with respect to Dunning, and Dunning has not filed a waiver of service in this case.

Because Telkamp has failed to provide any evidence that she properly served Dunning pursuant to Rule 4(e) or Connecticut law, she has failed to carry her burden of establishing sufficient service.  Dunning's Rule 12(b)(5) Motion to Dismiss (Doc. No. 67) is granted.

### 5. Genesis HealthCare, LLC

As noted above, the requirements for proper service of a corporation are outlined in Rule 4(h) and C.G.S.A. § 52-57(c).  In support of its contention that it was not served in accordance with these requirements, defendant Genesis HealthCare LLC ("Genesis") has submitted an Affidavit from Susan M. Overton ("Overton"), who identifies herself as "Vice President, Deputy General Counsel of Risk and Litigation at Genesis."  Overton Aff. at 1 (Doc. No. 67-5).  Overton attests that she is routinely notified when Genesis receives service of process in Connecticut, and she further states that she has not received notice of service in this lawsuit.  Id. at 2.  Overton alleges that "at no time was Genesis Healthcare LLC ever served with the Amended Complaint in this matter."  Id.

Telkamp does not appear to address Overton's contention that Genesis was not properly served in her Opposition to Genesis's Motion to Dismiss, and she has not submitted an Affidavit or other evidence that shows she caused Genesis to be properly served.  See Mem. of Law in Opp. to the Mot. to Dismiss of Defs. Genesis Healthcare, LLC, Gail Ward Curland, Tamara Martin-Linnard, and Erin Dunning Pursuant to Rule 12(b), F.R.Civ.P. (Doc. No. 71); see also Pl.'s Sur-Reply Br. in Opp. to Genesis Healthcare, LLC, Gail Ward Curland, Tamara Martin-Linnard and Erin Dunning's Mot. to

Dismiss (Doc. No. 78-1).  Furthermore, no Return of Service has been docketed with respect to Genesis, and Genesis has not filed a waiver of service in this case.

Because Telkamp has failed to provide any evidence that she properly served Genesis pursuant to Rule 4(h) or Connecticut law, she has failed to carry her burden of establishing sufficient service.  Genesis's Rule 12(b)(5) Motion to Dismiss (Doc. No. 67) is granted.

      D.    <u>Rule 12(b)(6)</u>

All of the defendants who have filed Motions to Dismiss have moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6).  The exact reasons defendants argue dismissal pursuant to Rule 12(b)(6) is warranted are myriad, varying by defendant and sometimes by specific claim.  In an effort to be clear and concise, the court will begin this analysis with an overview of the law relevant to all the bases set forth in defendants' pending Motions.  This includes discussion of section 52-190a of the Connecticut General Statutes, which nearly all of the defendants raise in their Motions to Dismiss, as well as the elements of claims of false imprisonment, assault and battery, defamation, negligence, intentional infliction of emotional distress, and constitutional due process.  The court will then proceed to an analysis of Telkamp's claims against the defendants who have moved to dismiss this action.

      1.    C.G.S.A. § 52-190a

Nearly all of the pending Motions to Dismiss argue that this action must be dismissed because Telkamp was required, and failed, to comply with the dictates of section 52-190a of the Connecticut General Statutes.  That statute provides:

> No civil action . . . shall be filed to recover damages resulting from personal injury or wrongful death . . . whether in tort or in contract, in

which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action . . . has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. . . . To show the existence of such good faith, the claimant . . . shall obtain a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion.

C.G.S.A. § 52-190a(a).  Failure to obtain and include such an opinion letter in a medical malpractice lawsuit is grounds for dismissal of the case for lack of personal jurisdiction. [8] See C.G.S.A. § 52-190a(c); Morgan v. Hartford Hospital, 301 Conn. 388, 401 (2011).  In assessing whether a lawsuit is subject to the requirements of section 52-190a, a court is not bound by the labels affixed to her claims by the plaintiff.  See Votre v. County Obstetrics and Gynecology Group, P.C., 113 Conn. App. 569, 576, 580 (2009).  The Connecticut Supreme Court has adopted a three-part test to determine whether a plaintiff's claims, however pled, are subject to the requirements of section 52-190a:  "(1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment."  Jarmie v.

---

[8] In reaching this conclusion, the Connecticut Supreme Court reasoned that "[t]he failure to provide a written opinion letter" in an action subject to section 52-190a "constitutes insufficient process," and therefore "service of that insufficient process does not subject the defendant to the jurisdiction of the court."  Morgan, 301 Conn. at 401.  Thus, "[f]ailure to comply with the statutory requirements of service renders a complaint subject to a motion to dismiss on the ground of lack of personal jurisdiction."  Id.
    The language in Morgan about insufficient process and personal jurisdiction appears to have caused many defendants in the present case to structure their objections on the basis of Telkamp's failure to comply with section 52-190a as Motions to Dismiss pursuant to Rule 12(b)(2) ("lack of personal jurisdiction") and Rule 12(b)(4) ("insufficient process").  See, e.g., Mot. to Dismiss at 1 (Doc. No. 37) (arguing that "this Court lacks personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and/or (4) because the plaintiff has failed to comply with Conn. Gen. Stat. 52-190a").  The court will treat all of the defendants' Motions to Dismiss for failure to comply with section 52-190a as Rule 12(b)(6) motions.

Troncale, 306 Conn. 578, 588 (2012) (internal quotations, alterations, and citation omitted).

Although section 52-190a refers specifically to situations involving the "negligence of a health care provider," C.G.S.A. § 52-190a(a) (emphasis added), both state and federal courts have occasionally deemed causes of action pled by plaintiffs as intentional torts to be subject to the requirements of section 52-190a. See, e.g., Votre, 113 Conn. App. at 571, 580 (affirming trial court's determination that plaintiff's complaint, which contained claims of infliction of emotional distress, breach of contract, and misrepresentation, sounded in medical malpractice); Bryans v. Cossette, No. 3:11-cv-01263 (JCH), 2012 WL 601790 at *5 (D. Conn. Feb. 23, 2012).  When determining that causes of action pled as intentional torts are subject to the requirements of section 52-190a, courts generally note that the plaintiff's claims hinge on alleged "deviation from professional medical standards." Votre, 113 Conn. App. at 574.  In other words, even if a plaintiff alleges that a particular cause of action is an intentional tort, if the gravamen of the plaintiff's complaint is a medical professional's deviation from the proper standard of care, the plaintiff's claims sound in medical malpractice, and the plaintiff is required to comply with section 52-190a.  This is a straightforward application of the principle that "[i]t is not the label that plaintiff placed on each count of her complaint that is pivotal but the nature of the legal inquiry."  Id. at 580.

Although claims pled as intentional torts may, under certain circumstances, sound in medical malpractice and therefore be subject to the requirements of section 52-190a, it is equally clear that "the mere fact that a physician [and] hospital . . . are involved does not make any tort committed against the patient malpractice."  Doe v.

21

Town of West Hartford, No. HHDX04CV106012130S, 2012 WL 1292589 at *3 (Conn. Super. Ct. Mar. 21, 2012).  Thus, the court must examine each of Telkamp's claims separately to assess whether any of her claims sound in medical malpractice.

### 2. False Imprisonment

Under Connecticut law, "false imprisonment is the unlawful restraint by one person of the physical liberty of another."  Felix v. Hall-Brooke Sanitarium, 140 Conn. 496, 499 (1953).  "To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly."  Berry v. Loiseau, 223 Conn. 786, 820 (1992) (internal quotations and citation omitted).  "That false imprisonment is an intentional tort . . . is well settled" in Connecticut, which means that "[a] person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it."  Rivera v. Double A. Transp., Inc., 248 Conn. 21, 31 (internal quotations and citations omitted).  Although the restraint need be intentional, it need not be long, because "[a]ny period of . . . restraint, however brief in duration, is sufficient to constitute a basis for liability."  Green v. Donroe, 186 Conn. 265, 267 (1982).

### 3. Assault and Battery

In Connecticut, as in other jurisdictions, the torts of assault and battery are similar and closely related.  The primary difference between the two is that while battery requires a harmful or offensive touching, assault requires only the imminent apprehension of such contact.  Thus, the elements of civil assault in Connecticut are:

(1) the defendant acts with the intent to cause a harmful or offensive contact, or the imminent apprehension of such contact, and (2) the plaintiff is actually put in imminent apprehension of the contact.  <u>Simms v. Chaisson</u>, 277 Conn. 319, 331 (2006) (internal quotations and citation omitted).  In contrast, the elements of the tort of battery are:  (1) the defendant acts with the intent to cause a harmful or offensive contact, or the imminent apprehension of such contact, and (2) harmful contact with the plaintiff directly or indirectly results.  <u>Id.</u>  Although battery requires physical contact, actual or substantial harm need not result from the contact for a defendant to be liable.  See <u>Schmeltz v. Tracy</u>, 119 Conn. 492 (1935).  Importantly for the present case, medical professionals who engage in or threaten physical contact that has not been consented to, even when that contact is for purposes of medical diagnosis and treatment, may be liable for assault and battery under Connecticut law.  <u>See</u> <u>id.</u>

        4.    Defamation

      As recently noted by the Connecticut Supreme Court, the general term "defamation" encompasses both the common law torts of libel and slander.  <u>See</u> <u>Gleason v. Smolinksi</u>, 319 Conn. 394, 430 n.30 (2015).  The difference between the two torts is that "slander is oral defamation," whereas "libel is written defamation."  <u>Id.</u> (internal quotations and citation omitted).  All claims of defamation require a plaintiff to establish that:  "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement."  <u>Id.</u> at 430.

In limited circumstances, a plaintiff may be able to argue that she was per se defamed, thus obviating the need to establish the fourth element of reputational harm. Id. at 430 n.31.  The modern view of defamation per se is that it generally applies to situations in which the defamatory statement includes allegation of a "chargeable offense which is punishable by imprisonment."  Id.  In such situations "injury to a plaintiff's reputation is conclusively presumed such that a plaintiff need neither plead nor prove" the reputational damage that has been suffered as a result of the defamatory statement.  Id.  Whether a particular statement is per se defamatory is a question of law for the court.  See Proto v. Bridgeport Herald Corp., 136 Conn. 557, 565 (1950); see also Lega Siciliana Social Club, Inc. v. St. Germaine, 77 Conn. App. 846, 852 (2003).

### 5.    Negligence

In Connecticut, as elsewhere, the "essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." Right v. Breen, 277 Conn. 364, 377 (2006).  "Without proof of each of these elements, a plaintiff's cause fails entirely, and he is not entitled to have the question of damages considered."  Id.

In addition to general negligence, however, Connecticut courts recognize a cause of action for negligence per se.  See Gore v. People's Savings Bank, 235 Conn. 360, 375-76 (1995).  Pursuant to the doctrine of negligence per se, "a requirement imposed by statute may establish the applicable standard of care to be applied in a particular action."  Id.  "[I]n order to establish liability as a result of a statutory violation, a plaintiff must satisfy two conditions.  First, the plaintiff must be within the class of persons protected by the statute. . . . Second, the injury must be of the type which the

24

statute was intended to prevent."  Id.  When these conditions are met, if a plaintiff can establish that the relevant statute was violated, "the defendant was negligent as a matter of law."  Id. at 376.

> 6.     Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress requires a plaintiff to establish four elements:  "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."  Appleton v. Board of Education of Town of Stonington, 254 Conn. 205, 210 (2000) (internal quotations and citations omitted).  In sum, "[l]iability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society."  Id.

> 7.     Constitutional Due Process

The Due Process Clause of the United States Constitution guarantees both procedural and substantive due process.  "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process."  Bryant v. New York State Educ. Dept., 692 F.3d 202, 218 (2d Cir. 2012).  In contrast, substantive due process "protects against certain government actions regardless of the fairness of the procedures used to implement them."  Id. at 217 (internal quotations and citation omitted).  However, the liberty interests protected by the federal Constitution are few, and the Supreme Court has "always been reluctant to expand the concept of substantive due process because

guideposts for responsible decisonmaking in this unchartered area are scarce and open-ended." Washington v. Glucksberg, 521 U.S. 702, 720 (1997) (internal quotations and citation omitted). Thus, a viable substantive due process claim will generally— although not exclusively—be based on the violation of a fundamental right or liberty interest that has long been recognized by the federal courts. See id. at 720 (listing fundamental rights and liberty interests protected by the United States Constitution).

A cognizable constitutional due process claim also requires that the conduct violating the Due Process Clause "be fairly characterized as 'state action.'" Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982); see also Glucksberg, 521 U.S. at 721 (noting that "the Fourteenth Amendment forbids the government to infringe fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest" (emphasis added) (internal quotations, alterations, and citation omitted)). "As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments . . . . Whether this is good or bad policy, it is a fundamental fact of our political order." Lugar, 457 U.S. at 936-37 (internal quotations and citation omitted).

8.    Analysis

The court will now turn to an analysis of whether Telkamp's claims are sufficiently pled to survive defendants' assorted Motions to Dismiss. Because Counts 1 and 2 of Telkamp's Amended Complaint appear to be directed at many defendants, the court will consider those counts first and as to all defendants plausibly implicated by the allegations those counts contain. For the rest of the Amended Complaint, however, the

court will aggregate Telkamp's claims by defendant and consider all of the claims against each defendant separately.  In most cases, the court will first consider whether the claims against the defendant must be dismissed for failure to comply with section 52-190a of the Connecticut General Statutes, before proceeding, if necessary, to a general analysis of whether the claims against the defendant are sufficiently pled to survive a Rule 12(b)(6) motion.

> a.    Count 1

Count 1 of Telkamp's Amended Complaint states that Telkamp was "Deprived of Liberty Without Due Process of Law."[9]  Am. Compl. at 24 (Doc. No. 17).  In addition to raising a federal constitutional claim, however, in Count 1 Telkamp argues that "federal regulations governing hospice care throughout the U.S." were violated when Telkamp was not permitted "to keep a 'vigil' or 'death watch,' in [her] daughter's private room."  Id.  Finally, in this Count Telkamp alleges that, through the various actions articulated in her Amended Complaint, the defendants murdered her daughter.  See id.

Although Martin-Linnard, McCarthy, and Banks are the only defendants specifically identified in Count 1, a liberal construction of the rest of Telkamp's Amended Complaint supports the view that she intended to allege that all of the defendants named in her pleading were responsible for depriving her of her federal constitutional

---

[9] The sole federal constitutional claim articulated in Count 1 of Telkamp's Amended Complaint is the deprivation of Telkamp's "right to keep a 'vigil' or 'death watch'" in her daughter's hospice room, which Telkamp argues is guaranteed to her by the Fourteenth Amendment of the United States Constitution. Am. Compl. at 24 (Doc. No. 17). However, in her Opposition to a Motion to Dismiss in this case, Telkamp puts forward additional constitutional claims, such as a fundamental right to privacy that she states protected her actions within her daughter's hospice room while she was visiting. See Pl.'s Mem. of Law in Opp. of Mot. to Dismiss on Behalf of Defs. Vitas Healthcare Corp., Atlantic and Kim Trowbridge at 4-5 (Doc. No. 83). Although the court is cognizant of the need to construe pro se pleadings liberally, this principle does not go so far as to allow the court to consider claims and theories of relief that Telkamp articulated for the first time in her briefing related to the pending Motions to Dismiss. Thus, the court will limit its consideration of Count 1 of Telkamp's Amended Complaint to the legal claims actually articulated in her pleading.

rights, violating federal regulations governing hospice care, and murdering her daughter.  Some, but not all, of the defendants have moved to dismiss Count 1 pursuant to Rule 12(b)(6).  See Mem. of Law in Supp. of Defs.' Mot. to Dismiss at 13 (Doc. No. 63-1); Mem. of Law in Supp. of the Mot. to Dismiss of Defs. Genesis HealthCare, LLC, Gail Ward Curland, Tamara Martin-Linnard, and Erin Dunning Pursuant to Rule 12(b), F.R.Civ.P. at 9 (Doc. No. 67-1).  However, the court has the power to dismiss a complaint pursuant to Rule 12(b)(6) sua sponte, see Mecca v. U.S. Government, 232 F. App'x 66, 66-67 (2d Cir. 2007) (upholding district court's sua sponte dismissal of complaint pursuant to Rule 12(b)(6)), and the court will therefore assess whether Count 1 of Telkamp's Amended Complaint articulates a facially plausible claim for relief against any of the defendants who have moved to dismiss the Amended Complaint at this juncture.[10]

     i.     Constitutional Due Process.  Construing Telkamp's pro se filings liberally, it appears that Telkamp seeks to assert both procedural and substantive due process claims in Count 1 of her Amended Complaint.  See Am. Compl. at 24 (Doc. No. 17). The court will consider each of these claims in turn.

As noted above, a cognizable procedural due process claim requires both the existence of a property or liberty interest and deprivation of that interest without due process.  See Bryant, 692 F.3d at 218.  Telkamp contends that she had an interest in remaining in the room in which her daughter received hospice care, and that she was deprived of this interest without due process.  See Am. Compl. at 24 (Doc. No. 17).

---

[10] Only two of the defendants named in this action—Michael McCarthy and Christopher Banks— have not filed motions to dismiss.  Both in this section and throughout the Ruling, the court declines to consider, and expresses no opinion as to the sufficiency of, the claims raised by Telkamp against these two defendants.

However, Telkamp's unsupported assertion that she had a right to remain in her daughter's room is not sufficient to establish that her understandable desire to remain with her daughter was a constitutionally protected entitlement.  See Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005).  "The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit': To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Id.  (internal quotations and citation omitted).   Entitlements protected by the Due Process Clause are "not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  Id. (internal quotations and citation omitted).

Although Telkamp argues that "the federal regulations governing hospice care throughout the U.S." protected her right to remain in her daughter's room, Am. Compl. at 24 (Doc. No. 17), the court concludes that Telkamp has not alleged sufficient facts from which the court could decide that the hospice regulations Telkamp cites applied to the facility in which her daughter received hospice care.  See infra part IV.D.8.a.ii. Because Telkamp cites no other source for a constitutionally protected entitlement to remain in her daughter's hospice room, and because the court has been unable to locate a source for such an entitlement, the court concludes that Telkamp has failed to plead facts sufficient to support a procedural due process claim.

Telkamp's substantive due process claim also fails.  As noted above, the Supreme Court has recognized only a small number of fundamental rights and liberty

interests protected against government intrusion by the Due Process Clause of the Fourteenth Amendment.  See Glucksberg, 521 U.S. at 720 (1997).  The fundamental rights and liberty interests that have been recognized by the Supreme Court include the right to marry, to have children, to direct the education and upbringing of those children, to marital privacy, to the use of contraception, to bodily integrity, and to abortion.  See id.  The right to keep a vigil at a dying loved one's bedside has never, to the court's knowledge, been recognized as a fundamental one that triggers Due Process protections by the Supreme Court or any other federal court.

Although Telkamp argues that the ability of family members of a dying individual to keep a vigil "is a deeply rooted tradition" in the United States and that, as a result, the right of family members to keep a death watch should be recognized as fundamental, see Pl.'s Mem. of Law in Opp. of Mot. to Dismiss on Behalf of Defs. Vitas Healthcare Corp., Atlantic and Kim Trowbridge at 1-2 (Doc. No. 83), the court is not persuaded. The court concludes that Telkamp's Amended Complaint and subsequent briefing have failed to provide support for the position that keeping a death watch at a dying family member's bedside implicates a fundamental right or liberty interest protected by the Due Process Clause of the United States Constitution.  See Glucksberg, 521 U.S. at 720 (listing the fundamental rights protected by the Due Process Clause and noting that the Supreme Court has "always been reluctant to expand the concept of substantive due process").

Because Telkamp's procedural and substantive due process claims are insufficient in the aforementioned ways, the court need not reach the question of whether the actions of the defendants who participated in Telkamp's removal were fairly

attributable to the state.  See Lugar, 457 U.S. at 924 (noting state action requirement for viable claim under the Fourteenth Amendment).  Telkamp's constitutional Due Process claims are dismissed pursuant to Rule 12(b)(6) as to all defendants who have moved to dismiss the Amended Complaint.

      ii.    Violation of Federal Regulations.  In Count 1 of her Amended Complaint, Telkamp also alleges that a right to keep a vigil at her daughter's bedside was provided by "the federal regulations governing hospice care throughout the U.S."  Am. Compl. at 24 (Doc. No. 17).  Elsewhere in her pleading, Telkamp cites sections 418.110-12 of title 42 of the Code of Federal Regulations as the federal regulations that protect her rights as a family member of a person in hospice.  See Am. Compl. at 7 (Doc. No. 17).  The specific regulation that Telkamp appears to be relying on is section 418.110, which states that "[a] hospice that provides inpatient care directly in its own facility must demonstrate compliance with all of the following standards," including the provision of "[a]ccommodations for family members to remain with the patient throughout the night." 42 C.F.R. § 418.110(e)(1)(ii).  Even assuming arguendo this regulation creates the right Telkamp claims and that the regulation provides a private cause of action to vindicate that right—both of which the court questions without deciding—Telkamp has alleged insufficient facts from which the court could conclude that the defendants in this matter could be liable for violation of section 418.110.  As noted above, the plain language of section 418.110 states that the standards contained in that regulation only apply to hospices that provide "inpatient care directly in [their] own facilit[ies]."[11]  Telkamp has not alleged sufficient facts for the court to conclude that the facility in which her

---

[11] Similarly, the terms of 42 C.F.R. § 418.112 appear to be limited to a subset of hospice providers, namely "[h]ospices that provide hospice care to residents of a SNF/NF or ICF/IID."

31

daughter received hospice care was such a facility and therefore subject to the regulations she cites.[12]  Because Telkamp has not pled facts from which the court could reasonably conclude that the facility was required to abide by the regulations Telkamp cites, she has failed to state a claim upon which relief could be granted for violation of those regulations.  This claim is dismissed pursuant to Rule 12(b)(6) as to all defendants who have moved to dismiss the Amended Complaint.

        iii.    <u>Murder</u>.  Telkamp's final allegation in Count 1 of the Amended Complaint is that the defendants' actions with respect to Telkamp and her daughter "amounted to murder" of Telkamp's daughter.[13]  Am. Compl. at 24 (Doc. No. 17).  However, there is no private cause of action for the crime of murder, because "crimes are prosecuted by the government, not by private parties."  <u>Hill v. Didio</u>, 191 F. App'x 13, 14-15 (2d Cir. 2006).  Furthermore, private citizens cannot compel the government to prosecute a criminal matter, because the decision of whether to prosecute an individual for a crime generally "rests entirely in [the] discretion" of the prosecutor.  <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996) (internal quotations and citation omitted).

---

[12] In fact, Telkamp has pled facts that tend to suggest her daughter's hospice provider was not subject to these regulations.  In her Amended Complaint, Telkamp recounts a conversation between herself and defendant Gail Ward Curland ("Curland"), an employee of the facility where Telkamp's daughter was located, Groton Regency, informed Telkamp that "only a hospice that cares for patients in its own facility must provide overnight accommodations for family members."  Am. Compl. at 7 (Doc. No. 17).  Telkamp states that Curland's information was "absolutely not true."  <u>Id.</u>  However, and as noted above, section 418.110 does, in fact, state that the standards outlined in that section only apply to "[a] hospice that provides inpatient care directly in its own facility."  42 C.F.R. § 418.110.

[13] Telkamp's claim that her daughter was murdered appears to be an attempt to allege that one or more of the defendants in this case should be criminally liable for her daughter's death.  <u>See</u> Am. Compl. at 24 (Doc. No. 17) ("On information and belief, the defendants' actions amounted to murder.  'Murder is the unlawful killing of a human being with malice aforethought.' (quoting 18 U.S.C. § 1111)).  Telkamp's claim related to criminal liability for her daughter's death is untenable for the reasons discussed in the text of this Ruling.  <u>See infra</u> part IV.D.8.a.iii.  However, the court also notes that, to the extent Telkamp's claim that her daughter was murdered is intended to be a claim that one or more of the defendants committed an intentional tort that resulted in her daughter's death, that claim would also be subject to dismissal on the grounds that Telkamp lacks standing to bring such a claim on her daughter's behalf.  <u>See</u> <u>supra</u> part IV.B.1.

Because there is no private cause of action for murder, Telkamp has failed to state a claim upon which relief could be granted for the alleged murder of her daughter.  This claim is dismissed pursuant to Rule 12(b)(6) as to all defendants who have moved to dismiss the Amended Complaint.

> b.  Count 2

Count 2 of Telkamp's Amended Complaint alleges breach of contract.  Am. Compl. at 25 (Doc. No. 17).  Specifically, Telkamp appears to be alleging that there was a "hospice care contract" between her daughter and the hospice provider, to which Telkamp was also a party.  Am. Compl. at 25 (Doc. No. 17) ("It is clear from the plain language of the hospice regulations that family members are a party to the hospice care contract.").  As with Count 1 of the Amended Complaint, it is somewhat unclear against whom Count 2 is directed; defendants Martin-Linnard and Trowbridge are mentioned by name in the paragraphs articulating this claim, but it does not seem that they are the only defendants against whom this Count is directed.  As with Telkamp's first Count, the court will therefore consider whether Count 2 is facially plausible with respect to any of the defendants who have moved to dismiss the Amended Complaint.

The Supreme Court noted in Iqbal that "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss, nor will a complaint that "tenders naked assertions devoid of further factual enhancement."  Iqbal, 556 U.S. at 678.  Although much of Telkamp's Amended Complaint is detailed and well-pled, Count 2 is comprised of legal conclusions that are not supported by specific factual allegations and therefore fails to satisfy the pleading standard set forth in Iqbal.  The lack of specific factual allegations related to

33

Count 2 is a serious problem because it creates confusion about what, exactly, Telkamp is claiming.  For example, it is not clear whether Telkamp is alleging that her daughter entered into a contract with her hospice provider, which contract incorporates the federal hospice regulations by reference, or whether Telkamp is alleging that the federal hospice regulations themselves create a contract between herself, her daughter, and the hospice provider.  Put another way, Count 2 of the Amended Complaint relies on "legal conclusion[s] couched as . . . factual allegation[s]," Iqbal, 556 U.S. at 678, instead of well-pleaded facts relevant to a breach of contract claim, such as who entered into the alleged contract, what the terms of the contract were, or how, specifically, the terms of the contract were breached.

The court is cognizant of the need to construe Telkamp's pro se pleading liberally, see Triestman, 470 F.3d at 474, as well as the fact that her allegations need not be extensive and detailed to survive a motion to dismiss, see Iqbal, 556 U.S. at 678. However, her pleading must contain sufficient facts that, if true, would "plausibly give rise to an entitlement to relief." Id. at 679.  Count 2 of the Amended Complaint fails to meet this standard.  This claim is dismissed pursuant to Rule 12(b)(6) as to all defendants who have moved to dismiss the Amended Complaint.

c.    Melissa Monte, D.O.

Defendant Monte has moved to dismiss Counts 17 and 18 of the Amended Complaint against her on the grounds that these claims sound in medical malpractice and Telkamp has failed to comply with the requirements of section 52-190a.  See Mot. to Dismiss ("Monte and Cronin-Vorih MTD") (Doc. No. 35).  Monte has not moved to dismiss any portion of Counts 28-42 of the Amended Complaint, which allege

34

"Intentional Infliction of Emotional Distress by All Individual Defendants."  Am. Compl. at
32 (Doc. No. 17).  Because Monte has not moved to dismiss the portion of Counts 28-
42 of the Amended Complaint directed against her, Telkamp's claim of intentional
infliction of emotional distress against Monte survives this Ruling.

Counts 17 and 18 of Telkamp's Amended Complaint allege false imprisonment
and assault and battery against Monte.  See Am. Compl. at 23-24 (Doc. No. 17).
Specifically, Telkamp alleges that she told Monte she wanted to leave the hospital, but
Monte would not permit her to leave the emergency department and medicated
Telkamp against her will.  See id. at 13, 20, 29.  Telkamp claims Monte had no legal
justification for keeping her in the hospital and, that as a result, Monte's refusal to
release her constituted the intentional tort of false imprisonment.  See id. at 17, 27, 29.
Telkamp also alleges that Monte had no lawful basis for medicating her, and that the
forced medication therefore constituted a harmful or offensive touching, i.e., the tort of
battery.  See id.

Taking Telkamp's allegations as true and drawing all reasonable inferences in
her favor, the court concludes that, at this stage in the litigation, it cannot decide that
Telkamp's claims are pled as claims of medical malpractice.  Telkamp's Amended
Complaint can (perhaps generally) be read to allege, not that Monte deviated from the
appropriate standard of care when Monte interacted with Telkamp in the emergency
department, but rather that Monte committed the torts of false imprisonment and battery
when she refused to allow Telkamp to leave the hospital and forcibly medicated her
without either a lawful basis for these actions or Telkamp's consent to treatment.  See
Doe, 2012 WL 1292589 at *4 (finding that a plaintiff's allegation of forced medication

stated a claim of assault and battery, not medical malpractice). Because Telkamp has not alleged claims of medical malpractice, she was not obligated to comply with the requirements of section 52-190a of the Connecticut General Statutes. Monte's Rule 12(b)(6) Motion to Dismiss (Doc. No. 35) on this ground is denied.[14]

d.     Deirdre Cronin-Vorih, M.D.

Defendant Cronin-Vorih has moved to dismiss Counts 19 and 20 of the Amended Complaint against her on the grounds that these claims sound in medical malpractice and Telkamp has failed to comply with the requirements of section 52-190a. See Monte and Cronin-Vorih MTD (Doc. No. 35). Cronin-Vorih has not moved to dismiss any portion of Counts 28-42 of the Amended Complaint, which allege "Intentional Infliction of Emotional Distress by All Individual Defendants." Am. Compl. at 32 (Doc. No. 17). Because Cronin-Vorih has not moved to dismiss the portion of Counts 28-42 of the Amended Complaint directed against her, Telkamp's claim of intentional infliction of emotional distress against Cronin-Vorih survives this Ruling.

Counts 19 and 20 of Telkamp's Amended Complaint allege false imprisonment and libel per se against Cronin-Vorih. See Am. Compl. at 24 (Doc. No. 17). Specifically, Telkamp alleges that Cronin-Vorih diagnosed her with "Acute Alcoholic Intoxication in Alcoholism," which Telkamp states is "not an emergency and cannot be made or treated in an emergency room setting." Id. Telkamp also alleges that Cronin-Vorih referred Telkamp for crisis intervention services without legal basis. See id. at 20. Telkamp claims that, because Cronin-Vorih lacked legal basis to diagnosis, treat, and

---

[14] However, it is the court's view that, as the record is discovered, the facts may support only a claim based on medical malpractice, at which point this claim would have to be dismissed or judgment entered for the defendant due to Telkamp's failure to comply with section 52-190a of the Connecticut General Statutes.

refer Telkamp, her actions constituted false imprisonment, and because her diagnosis was incorrect, it was libel per se.  See id. at 29.

Whether Telkamp's claims against Cronin-Vorih sound in medical malpractice or ordinary tort is a very close question.  However, at this stage in the proceedings, taking all of Telkamp's allegations as true, and drawing all reasonable inferences in Telkamp's favor, the court concludes that Telkamp's allegations against Cronin-Vorih appear to be general tort claims, not claims of medical malpractice.  At base, Telkamp does not allege that Cronin-Vorih deviated from the appropriate standard of care, but rather that Cronin-Vorih had no legal basis for diagnosing, treating, and keeping Telkamp in the hospital at all.  See Am. Compl. at 29 (Doc. No. 17) (alleging that Telkamp's treatment by Cronin-Vorih in the emergency department "was a false imprisonment").  There are not presently facts before the court that contradict Telkamp's assertions that (1) she did not consent to treatment at the hospital, and (2) there was no legal basis for her involuntary treatment.  See Am. Compl. at 17 (alleging that Telkamp did not consent to treatment); cf. Banks and McCarthy Answer at 6 (Doc. No. 50) (admitting that the police officer defendants did not complete an "Emergency Involuntary Committal Form"); id. at 10-11 (admitting that the police officer defendants did not complete a "Police Emergency Examination Request").  Under this set of circumstances, and at this time,[15] the court will treat Telkamp's claims against Cronin-Vorih as captioned, i.e., as the general torts of false imprisonment and defamation.  Because Telkamp has not alleged claims of medical malpractice, she was not obligated to comply with the requirements of

---

[15] As noted with respect to Monte, however, this is a determination that the court may revisit upon development of a fuller record.  See supra note 14.

section 52-190a of the Connecticut General Statutes.  Cronin-Vorih's Rule 12(b)(6)

Motion to Dismiss (Doc. No. 35) on this ground is denied.

> e.    Kristy Davenport

Defendant Davenport has moved to dismiss the Amended Complaint on the

grounds that: (1) the claims against her sound in medical malpractice and Telkamp has

failed to comply with the requirements of section 52-190a, and (2) Telkamp has failed to

state a claim against Davenport upon which relief could be granted.  See Mot. to

Dismiss ("L+M Hospital, Davenport, and Braasch MTD") (Doc. No. 37).  The court will

consider these arguments in turn.

Counts 11-13 of Telkamp's Amended Complaint allege false imprisonment, libel

per se, and assault against Davenport.  See Am. Compl. at 22-23 (Doc. No. 17).

Specifically, Telkamp alleges that Davenport "post[ed] a security guard near [Telkamp's]

bed and threatened that if [Telkamp] tried to leave [she] would be tied to the bed."  Id. at

23.  Telkamp asserts that these actions constituted false imprisonment and assault.

Telkamp also alleges that, when interacting with Telkamp at triage, Davenport recorded

that Telkamp had "assaulted staff at nursing home."  Id. at 22.  Telkamp states that this

action constitutes libel per se.  Finally, Telkamp alleges intentional infliction of emotional

distress against Davenport for these actions in some portion of Counts 28-42.  See id.

at 32.

Taking Telkamp's allegations as true, the court concludes that Telkamp's claims

are pled as torts other than medical malpractice.  Telkamp is not alleging that Davenport

deviated from the appropriate standard of care when Davenport interacted with Telkamp

in the emergency department, but rather that Davenport committed the torts of false

38

imprisonment, assault, defamation, and intentional infliction of emotional distress when she posted a security guard near Telkamp, informed Telkamp that she would tie her to the bed if Telkamp tried to leave, recorded defamatory statements in Telkamp's medical records, and, through these actions, kept Telkamp from returning to her dying daughter's bedside. Because Telkamp has not alleged claims of medical malpractice,[16] she was not obligated to comply with the requirements of section 52-190a of the Connecticut General Statutes and Davenport's Rule 12(b)(6) Motion to Dismiss (Doc. No. 37) on these grounds is denied.

Davenport has also moved to dismiss Telkamp's claims against her for failure to state a claim upon which relief could be granted. See L+M Hospital, Davenport, and Braasch MTD (Doc. No. 37). Assuming the truth of Telkamp's allegations, the court concludes that Telkamp has pled sufficient facts to support facially plausible claims of false imprisonment, assault, and intentional infliction of emotional distress against Davenport. However, the court agrees with Davenport that Telkamp has failed to plead facts sufficient to make out a facially plausible claim of libel per se. Even assuming arguendo that Davenport's statements could constitute per se defamation, Telkamp has not pled facts from which the court could conclude that Davenport's statements were published to a third party. See Gleason, 319 Conn. at 430 (noting that an element of defamation is that "the defamatory statement was published to a third person"). Specifically, Telkamp has not alleged that anyone other than Davenport and Telkamp

---

[16] As noted with respect to other defendants, this is a determination that the court may need to revisit upon development of a fuller record. See supra note 14.

was made aware of Davenport's allegedly defamatory statements.[17]  Without a plausible

allegation of publication to a third party, Telkamp's defamation claim against Davenport

fails.  Davenport's Motion to Dismiss (Doc. No. 37) is granted with respect to Telkamp's

claim of libel per se, but denied for Telkamp's claims of false imprisonment, assault, and

intentional infliction of emotional distress.

> f.    Laina Braasch

Defendant Braasch has also moved to dismiss the Amended Complaint on the

grounds that: (1) the claims against her sound in medical malpractice and Telkamp has

failed to comply with the requirements of section 52-190a, and (2) Telkamp has failed to

state a claim against Braasch upon which relief could be granted.  See L+M Hospital,

Davenport, and Braasch MTD (Doc. No. 37).  The court will consider these arguments

in turn.

Counts 21-23 of Telkamp's Amended Complaint allege false imprisonment, libel

per se, and assault against Braasch.  See Am. Compl. at 29-30 (Doc. No. 17).

Specifically, Telkamp alleges that Braasch completed an "Emergency/Psychosocial

Assessment" of Telkamp after a referral by Cronin-Vorih.  Am. Compl. at 20 (Doc. No.

17).  Telkamp states that there was no lawful basis for Braasch's crisis intervention,

because she was not in crisis.  See id.  Telkamp claims that "the purpose of the crisis

intervention was to enforce [her] banishment" from her daughter's bedside, id. at 21,

---

[17] In her Motion to Dismiss, Davenport argues that, because her statements were recorded in
Telkamp's medical records and those medical records are confidential pursuant to the Health Insurance
Portability and Accountability Act ("HIPAA"), see 45 C.F.R § 164.508, Telkamp would have to allege that
Davenport's defamatory statements were published to someone outside of L+M Hospital to satisfy the
defamation element of publication to a third party.  See Mem. of Law in Support of Ds.' Mot. to Dismiss at
12 (Doc. No. 37-1).  Because Telkamp has failed to allege that Davenport's statements were published to
anyone else, whether inside or outside the hospital, the court need not reach the question of whether the
recording of defamatory statements in confidential medical records that can be reviewed by healthcare
professionals within a single organization can satisfy the publication element of a defamation claim.

and that Braasch's psychiatric assessment constituted libel <u>per</u> <u>se</u> because it included "criminal allegations," <u>id.</u> at 29.  Telkamp also alleges that Braasch assaulted her by telling Telkamp that, if she "returned to the Groton Regency, [she] would be arrested." <u>Id.</u> at 30.  Finally, Telkamp alleges intentional infliction of emotional distress against Braasch for these actions in some portion of Counts 28-42.  <u>See</u> <u>id.</u> at 32.

Assuming the truth of Telkamp's allegations, the court concludes that Telkamp's claims are not pled as claims of medical malpractice.  Telkamp is not alleging that Braasch deviated from the appropriate standard of care when Braasch interacted with Telkamp, but rather that Braasch committed the torts of false imprisonment, assault, defamation, and intentional infliction of emotional distress when she completed a "psychosocial" assessment of Telkamp without either legal justification or Telkamp's consent, and through these actions kept Telkamp from returning to her dying daughter's bedside.  Because Telkamp has not alleged claims of medical malpractice, she was not obligated to comply with the requirements of section 52-190a of the Connecticut General Statutes, and Braasch's Rule 12(b)(6) Motion to Dismiss (Doc. No. 37) on these grounds is denied.[18]

Braasch has also moved to dismiss Telkamp's claims against her for failure to state a claim upon which relief could be granted.  <u>See</u> L+M Hospital, Davenport, and Braasch MTD (Doc. No. 37).  Assuming the truth of Telkamp's allegations and construing her <u>pro</u> <u>se</u> Amended Complaint liberally, the court concludes that Telkamp has made out a facially plausible claim of intentional infliction of emotional distress, because she alleges that Braasch's crisis intervention was without lawful justification

---

[18] As noted with respect to other defendants, this is a determination that the court may need to revisit upon development of a fuller record.  <u>See</u> <u>supra</u> note 14.

and undertaken for the purpose of keeping Telkamp from returning to her dying daughter's bedside.  See Am. Compl. at 21, 32 (Doc. No. 17).  Braasch's Motion to Dismiss (Doc. No. 37) is denied with respect to Telkamp's claim of intentional infliction of emotional distress.

However, Telkamp has not made out facially plausible claims of false imprisonment, libel per se, or assault against Braasch.  With respect to Telkamp's claim of false imprisonment, she has not alleged that her "physical liberty [was] restrained" by Braasch, a necessary element of a claim of false imprisonment.[19]  Berry, 223 Conn. at 820.  Thus, her claim of false imprisonment against Braasch fails to state a claim upon which relief could be granted.

Telkamp has also failed to plead facts from which the court could conclude that Braasch's allegedly defamatory statements were published to a third party, see Gleason, 319 Conn. at 430, because she has not alleged that anyone other than Braasch and Telkamp was made aware of Braasch's statements in her "psychosocial" assessment.  Without a plausible allegation of publication to a third party, Telkamp's libel per se claim against Braasch fails.

Finally, Telkamp's assault claim is facially implausible because she has not alleged facts from which the court could conclude that Braasch's statements placed Telkamp in imminent apprehension of harmful or offensive contact.  See Simms, 277

---

[19] The court notes that Telkamp alleges that "the purpose of the crisis intervention" conducted by Braasch "was to enforce [her] banishment" from her daughter's hospice room.  Am. Compl. at 21 (Doc. No. 17).  However, Telkamp's contention that Braasch's actions were designed to keep her from one particular place (her daughter's room) is different than alleging that Braasch sought to accomplish these ends by forcing Telkamp to remain in a place against her will.  While the latter allegation might be sufficient to support a claim of false imprisonment against Braasch, the former allegation is not.  Because Telkamp has not alleged facts that, if true, could lead the court to conclude that Braasch committed the tort of false imprisonment, this claim must be dismissed pursuant to Rule 12(b)(6).

Conn. at 331.  Telkamp claims that Braasch assaulted her by telling her that she would be arrested if she returned to the Groton Regency, but this threat is too remote in time and place to have created in Telkamp a reasonable apprehension of an <u>imminent</u> harmful or offensive contact.  <u>Cf. Texeira v. Curren</u>, No. NNHCV146044710S, 2014 WL 4814722 at *2 (Conn. Super. Ct. Aug. 21, 2014) ("Assault has also been defined as any attempt with force or violence to do corporeal offense to another, coupled with the <u>present apparent ability to complete the act</u>. . . ." (emphasis added)).  For the foregoing reasons, Braasch's Motion to Dismiss (Doc. No. 37) is granted with respect to Telkamp's claims of false imprisonment, assault, and defamation.

> g.      Lawrence & Memorial Hospital, Inc.

Defendant L+M Hospital has moved to dismiss the Amended Complaint on the grounds that: (1) the claim against L+M Hospital sounds in medical malpractice and Telkamp has failed to comply with the requirements of section 52-190a, and (2) Telkamp has failed to state a claim against L+M Hospital upon which relief could be granted.  <u>See</u> L+M Hospital, Davenport, and Braasch MTD (Doc. No. 37).  The court will consider these arguments in turn.

The sole Count directed against L+M Hospital is Count 6 of the Amended Complaint, which alleges false imprisonment.  <u>See</u> Am. Compl. at 26-27 (Doc. No. 17). Specifically, Telkamp alleges that she did not consent to treatment at L+M Hospital, that she asked to leave L+M Hospital, and that, despite the fact that L+M Hospital lacked a legal basis for holding Telkamp against her will, L+M Hospital refused to allow Telkamp to leave.  <u>See id.</u> at 14-15, 26-27.

43

Although it is a close question, at this stage in the litigation the court concludes that Telkamp's claim is not pled as a claim of medical malpractice.  See Doe, 2012 WL 1292589 at *4 (finding that claim against hospital defendants for involuntary commitment without legal basis was pled as false imprisonment, not medical malpractice).  Telkamp is not alleging that L+M Hospital deviated from the appropriate standard of care when the Hospital refused to allow Telkamp to leave, but rather that holding Telkamp against her will and without legal justification constituted the intentional tort of false imprisonment.  Because Telkamp has not alleged a claim of medical malpractice, she was not obligated to comply with the requirements of section 52-190a of the Connecticut General Statutes, and L+M Hospital's Rule 12(b)(6) Motion to Dismiss (Doc. No. 37) on these grounds is denied.[20]

L+M Hospital has also moved to dismiss Telkamp's claims for failure to state a claim upon which relief could be granted.  See L+M Hospital, Davenport, and Braasch MTD (Doc. No. 37).  Assuming the truth of Telkamp's allegations and construing her pro se Amended Complaint liberally, the court concludes that Telkamp has made out a facially plausible claim of false imprisonment against L+M Hospital.  L+M Hospital's Rule 12(b)(6) Motion to Dismiss (Doc. No. 37) is denied.

> h.    Groton Ambulance Association, Inc.

Defendant Groton Ambulance has moved to dismiss the Amended Complaint on the grounds that: (1) the claims against Groton Ambulance sound in medical malpractice and Telkamp has failed to comply with the requirements of section 52-190a; and (2) Telkamp has failed to state a claim against Groton Ambulance upon which relief

---

[20] As noted with respect to other defendants, this is a determination that the court may need to revisit upon development of a fuller record.  See supra note 14.

could be granted.  See Defendants' Motion to Dismiss ("Groton Ambulance, Kaniecki, and Edwards MTD") (Doc. No. 63).  The court will consider these arguments in turn.

The sole Count specifically directed against Groton Ambulance is Count 5 of the Amended Complaint, which alleges false imprisonment.  See Am. Compl. at 26 (Doc. No. 17).  In particular, Telkamp alleges that she did not consent to transport by Groton Ambulance, that there was no legal basis for her involuntary transport in the ambulance, and that, as a result, her confinement in the ambulance constituted false imprisonment. See id. at 10-11, 26.

Taking Telkamp's allegations as true, the court concludes that Telkamp's claim is not pled as a claim of medical malpractice.  Telkamp is not alleging that Groton Ambulance deviated from the appropriate standard of care when the ambulance transported Telkamp to L+M Hospital against her will, but rather that confining Telkamp in the ambulance without her consent and without legal justification constituted the intentional tort of false imprisonment.  Because Telkamp has alleged a tort,[21] not a claim of medical malpractice, she was not obligated to comply with the requirements of section 52-190a of the Connecticut General Statutes, and Groton Ambulance's Motion to Dismiss (Doc. No. 63) on these grounds is denied.

Groton Ambulance has also moved to dismiss Telkamp's claims for failure to state a claim upon which relief could be granted.  See Groton Ambulance, Kaniecki, and Edwards MTD (Doc. No. 63).  Assuming the truth of Telkamp's allegations and construing her pro se Amended Complaint liberally, the court concludes that Telkamp has made out a facially plausible claim of false imprisonment against Groton

---

[21] As noted with respect to other defendants, this is a determination that the court may need to revisit upon development of a fuller record.  See supra note 14.

Ambulance.  In Connecticut, "[a]ny period of . . . restraint, however brief in duration, is sufficient to constitute a basis for liability" for false imprisonment.  Green, 186 Conn. at 267.  Thus, the period of time that it took for Groton Ambulance to transport Telkamp to L+M Hospital, if done against Telkamp's will and without legal justification, could be sufficient to constitute a false imprisonment under Connecticut law.  Groton Ambulance's Rule 12(b)(6) Motion to Dismiss (Doc. No. 63) is denied.

i.     Chester Kaniecki and Paula Edwards

Defendants Kaniecki and Edwards have moved to dismiss the Amended Complaint on the same grounds as Groton Ambulance.  Groton Ambulance, Kaniecki, and Edwards MTD (Doc. No. 63).

Count 5 of Telkamp's Amended Complaint alleges that Kaniecki and Edwards falsely imprisoned Telkamp when they transported her to L+M Hospital without her consent and without legal justification.  See Am. Compl. at 10-11, 26 (Doc. No. 17).  Furthermore, Telkamp alleges that the actions of Kaniecki and Edwards constituted intentional infliction of emotional distress in some portion of Counts 28-42.  See id. at 32-33.

Assuming the truth of Telkamp's allegations, the court concludes that Telkamp's claims are not pled as claims of medical malpractice.  Telkamp is not alleging that Kaniecki and Edwards deviated from the appropriate standard of care when they caused her to be transported to L+M Hospital in an ambulance against her will, but rather that confining Telkamp in the ambulance without her consent and without legal justification constituted the intentional torts of false imprisonment and intentional infliction of emotional distress.  Because Telkamp has alleged torts other than medical

46

malpractice, she was not obligated to comply with the requirements of section 52-190a of the Connecticut General Statutes, and Kaniecki's and Edwards's Motion to Dismiss (Doc. No. 63) on these grounds is denied.[22]

Kaniecki and Edwards have also moved to dismiss Telkamp's claims for failure to state a claim upon which relief could be granted.  See Groton Ambulance, Kaniecki, and Edwards MTD (Doc. No. 63).  Assuming the truth of Telkamp's allegations and construing her pro se Amended Complaint liberally, the court concludes that Telkamp has made out facially plausible claims of false imprisonment and intentional infliction of emotional distress against Kaniecki and Edwards.  Kaniecki's and Edwards's Motion to Dismiss (Doc. No. 63) on these grounds is also denied.

j.      Tamara Martin-Linnard

Defendant Martin-Linnard has moved to dismiss the Amended Complaint against her pursuant to Rule 12(b)(6).  See Genesis Defendants MTD (Doc. No. 67).

Some portion of Counts 9-10 of the Amended Complaint alleges slander per se against Martin-Linnard.[23]  Am. Compl. at 27 (Doc. No. 17).  Specifically, Telkamp claims that Martin-Linnard said Telkamp "had gotten intoxicated, fought with [her] daughter's boyfriend, had a bottle of vodka on [her] and assaulted the staff of the Groton Regency who caught [her] giving some vodka to [her] terminally ill daughter."  Id.  Telkamp claims that, because Martin-Linnard did not identify the staff members who caught her engaging in the alleged behavior, her "allegations of intoxication and criminal behavior

_____

[22] As noted with respect to other defendants, this is a determination that the court may need to revisit upon development of a fuller record.  See supra note 14.

[23] The other portion of Counts 9-10 alleges slander per se against Erin Dunning.  See Am. Compl. at 27 (Doc. No. 17).  The court has already dismissed the claims against Dunning pursuant to Rule 12(b)(5).  See supra section IV.C.4.

were slanderous per se." Id.  Telkamp also alleges intentional infliction of emotional distress against Martin-Linnard for these actions in some portion of Counts 28-42.  See id. at 32.

Taking Telkamp's allegations as true and construing her pro se Amended Complaint liberally, the court concludes that Telkamp has pled sufficient facts to make out a facially plausible claim of slander per se.  As noted above, the modern view of per se defamation in Connecticut is that it involves an allegation that the plaintiff committed a "chargeable offense which is punishable by imprisonment."  Gleason, 319 Conn. at 430 n.31; see also Hueblein v. Burgess, No. 548515, 1999 WL 488083 at *2 (Conn. Super. Ct. July 1, 1999) (noting that the "modern view" of per se defamation "only requires that the charged crime be punishable by imprisonment").  Criminal assault is an offense punishable by a term of imprisonment in Connecticut.  See, e.g., C.G.S.A. § 53a-61 (noting that assault in the third degree is "a class A misdemeanor" punishable by "a term of imprisonment of one year").  Therefore, Telkamp's assertion that Martin-Linnard told police officers that Telkamp was intoxicated and had assaulted staff at the Groton Regency makes out a plausible claim of slander per se.

Telkamp also claims, in some portion of Counts 28-42, that Martin-Linnard's actions constituted intentional infliction of emotional distress.  See Am. Compl. at 32 (Doc. No. 17).  Assuming the truth of all of Telkamp's allegations and construing her pro se pleading liberally, the court concludes that the claim of intentional infliction of emotional distress against Martin-Linnard also states a cause of action that is facially plausible.  In this regard, the court notes that Officer McCarthy's police report states that Martin-Linnard "advised Telkamp she was banned from the Groton Regency."  See

48

Groton Town Police Dep't Narrative for Patrol Officer Michael McCarthy at 3 ("Police Report") (Doc. No. 17, Ex. 1).  Assuming the truth of Telkamp's allegation that this banishment was intentional and without basis, see Am. Compl. at 8-9 (Doc. No. 17), the court concludes that forbidding a mother from remaining by her terminally ill daughter's bedside states a facially plausible claim for intentional infliction of emotional distress.

Because Telkamp's claims of slander per se and intentional infliction of emotional distress against Martin-Linnard are facially plausible, Martin-Linnard's Rule 12(b)(6) Motion to Dismiss these claims (Doc. No. 67) is denied.

k.    Ashley Creswell

Defendant Creswell has moved to dismiss the Amended Complaint against her on the grounds that: (1) these claims sound in medical malpractice and Telkamp has failed to comply with the requirements of section 52-190a, and (2) Telkamp has failed to state a claim against Creswell upon which relief could be granted.  See Ashley Creswell's Mot. to Dismiss ("Creswell MTD") (Doc. No. 70).  The court will consider these arguments in turn.

Counts 14-16 of Telkamp's Amended Complaint allege false imprisonment, libel per se, and assault against Creswell.  See Am. Compl. at 28 (Doc. No. 17). Specifically, Telkamp alleges that Creswell signed a form that resulted in Telkamp's admittance to L+M Hospital and threatened to tie Telkamp to the bed if she tried to escape, which actions constituted false imprisonment and assault.  See id.  Telkamp also claims that Creswell "repeated the allegations made by [other defendants] and accused [her] of 'hitting and pushing' the staff at the Groton Regency."  Id.  Telkamp asserts that these "criminal allegations are libelous per se."  Id.  Finally, Telkamp

alleges intentional infliction of emotional distress against Creswell for these actions in some portion of Counts 28-42.  See id. at 32.

Assuming the truth of Telkamp's allegations, the court concludes that Telkamp's claims are not pled as claims of medical malpractice.  As with Telkamp's claims with respect to other defendants, discussed in previous sections, Telkamp is not alleging that Creswell deviated from the appropriate standard of care when Creswell interacted with Telkamp, but rather that Creswell committed the torts of false imprisonment, assault, defamation, and intentional infliction of emotional distress when she admitted Telkamp to L+M Hospital against her will and refused to permit her to leave without legal justification, and through these actions kept Telkamp from returning to her dying daughter's bedside.  Because Telkamp has not alleged claims of medical malpractice, she was not obligated to comply with the requirements of section 52-190a of the Connecticut General Statutes.  Creswell's Rule 12(b)(6) Motion to Dismiss (Doc. No. 70) on this ground is denied.[24]

Turning next to Creswell's argument that Telkamp's claims against her fail to state causes of action upon which relief could be granted, the court concludes that Telkamp has made out facially plausible claims of false imprisonment,[25] assault, and

---

[24] As noted with respect to other defendants, this is a determination that the court may need to revisit upon development of a fuller record.  See supra note 14.

[25] The court notes Creswell's argument that Telkamp's primary allegation with respect to false imprisonment is that "Creswell, without authority of law, signed the unfilled out Ambulance Crew/Facility Rep form admitting me to the [emergency department], which action constituted false imprisonment," Am. Compl. at 28 (Doc. No. 17), which factual allegation Creswell argues fails to state a facially plausible claim for false imprisonment, see Mem. of Law in Supp. of Def. Ashley Creswell's Mot. to Dismiss ("Creswell Mem.") at 9 (Doc. No. 70-1).  However, the court is construing Telkamp's pro se pleading liberally, and therefore concludes that, even if Creswell's argument was accepted, Telkamp has still made out a facially plausible claim of false imprisonment through her allegation that Creswell, without legal justification, told Telkamp that she would tie her to her hospital bed if she tried to leave.  See Am. Compl. at 15, 28 (Doc. No. 17).

intentional infliction of emotional distress.  However, the court agrees with Creswell that Telkamp has failed to plead facts sufficient to make out a facially plausible claim of libel per se.  Even assuming arguendo that Creswell's statements could constitute per se defamation, Telkamp has not pled facts from which the court could conclude that Creswell's statements were published to a third party.  See Gleason, 319 Conn. at 430. Specifically, Telkamp has not alleged that anyone other than Creswell and Telkamp was made aware of Creswell's allegedly defamatory statements.[26]  Without a plausible allegation of publication to a third party, Telkamp's defamation claim against Creswell fails.  Creswell's Motion to Dismiss (Doc. No. 70) is granted with respect to Telkamp's claim of libel per se, but denied for Telkamp's claims of false imprisonment, assault, and intentional infliction of emotional distress.

I.      Kim Trowbridge

Defendant Trowbridge has moved to dismiss the Amended Complaint against her pursuant to Rule 12(b)(6).  See Mot. to Dismiss on Behalf of Defs. Vitas Healthcare Corp. Atlantic and Kim Trowbridge ("Vitas and Trowbridge MTD") at 1 (Doc. No. 79).

Some portion of Counts 24-25 of the Amended Complaint alleges "personal injury" against Trowbridge.[27]  Am. Compl. at 30-31 (Doc. No. 17).  What Telkamp

---

[26] In her Motion to Dismiss, Creswell, like Davenport, argues that, because her statements were recorded in Telkamp's medical records and those medical records are confidential pursuant to HIPAA, see 45 C.F.R § 164.508, Telkamp would have to allege that Creswell's defamatory statements were published to someone outside of L+M Hospital to satisfy the defamation element of publication to a third party.  See Creswell Mem. at 10-11 (Doc. No. 70-1).  As the court noted earlier, however, because Telkamp has failed to allege that Creswell's statements were published to anyone else, whether inside or outside the hospital, the court need not reach the question of whether the recording of defamatory statements in confidential medical records that can be reviewed by healthcare professionals within a single organization can satisfy the publication element of a defamation claim under Connecticut law.

[27] The other portion of Counts 24-25 alleges "personal injury" against Gail Ward Curland.  See Am. Compl. at 30 (Doc. No. 17).  The court has already dismissed the claims against Curland pursuant to Rule 12(b)(5).  See supra section IV.C.3.

captions as a "personal injury" claim appears to be a straightforward claim of negligence. Specifically, Telkamp alleges that Trowbridge had a duty to provide her with overnight accommodations to remain near her daughter, that Trowbridge breached this duty, and that Trowbridge's breach caused Telkamp "severe sleep deprivation" that several weeks later resulted in Telkamp being "rushed to the hospital with symptoms of a heart attack." See id. at 30. Although there are potential problems with multiple elements of Telkamp's negligence claim against Trowbridge, the court will focus on just one of them—namely, whether Trowbridge owed Telkamp a duty at all.

Telkamp alleges that the duty Trowbridge owed her flows from the federal regulations that provide that certain hospices must "provide overnight accommodations for family members." Id.; see also 42 C.F.R. § 418.110(e)(1)(ii). However, and as noted in a previous section of this Ruling, see supra section IV.D.8.a.ii, the plain language of section 418.110 states that the standards provided in that regulation apply only to "[h]ospices that provide inpatient care directly." 42 C.F.R. 418.110. Telkamp has failed to allege facts from which the court could conclude that the hospice in which her daughter resided was subject to this regulation and, as a result, the court cannot conclude that the regulation created a duty that Trowbridge violated when she declined to provide Telkamp with overnight accommodations in the hospice facility.[28] Because failure to prove any element of a negligence claim results in a plaintiff's claim failing in its entirety, see Right, 277 Conn. at 377, Telkamp's failure to allege facts that, if true, would be sufficient to establish that Trowbridge owed her a duty means that Telkamp's

---

[28] Because Telkamp has failed to allege sufficient facts that, if true, would establish that Telkamp's interactions with her daughter's hospice provider were governed by section 418.110, Telkamp's "personal injury" claim also fails to state a facially plausible cause of action for negligence per se.

negligence claim fails.  Trowbridge's Rule 12(b)(6) Motion to Dismiss (Doc. No. 79) is granted as to this claim.

Telkamp also claims, in some portion of Counts 28-42, that Trowbridge's actions constituted intentional infliction of emotional distress.  See Am. Compl. at 32 (Doc. No. 17).  Construing Telkamp's <u>pro se</u> pleading liberally, the court concludes that Telkamp's claim of intentional infliction of emotional distress is based not only on Trowbridge's alleged failure to provide Telkamp with overnight accommodations, but also statements Telkamp alleges Trowbridge made to her with the intent of misleading her and making it difficult for her to remove her daughter from hospice care.  <u>See</u> Am. Compl. at 6-8 (Doc. No. 17).  Specifically, Telkamp alleges that her daughter wished to revoke her hospice status, that Telkamp informed Trowbridge of her daughter's decision, and that the documents necessary to revoke hospice care were prepared.  <u>See id.</u> at 6.  According to Telkamp, Trowbridge then intentionally misled Telkamp about the availability of a notary to effect the revocation documents in order to delay Telkamp from removing her daughter from hospice care.  <u>See id.</u> at 6-8.  Telkamp alleges that her daughter entered the phase of "active dying" during the delay occasioned by Trowbridge's actions.  <u>See id.</u>

Assuming the truth of these allegations, the court concludes that these allegations state a facially plausible claim for intentional infliction of emotional distress against Trowbridge.  Trowbridge's Motion to Dismiss this claim (Doc. No. 79) is denied.

m.    Vitas Healthcare Corp. Atlantic

Defendant Vitas Healthcare Corp. Atlantic ("Vitas") has moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6).  <u>See</u> Vitas and Trowbridge MTD at 1

(Doc. No. 79).  The Amended Complaint does not direct any counts specifically at Vitas, and, so far as the court can tell, only two counts of the Amended Complaint—Counts 1 and 2—are arguably directed at Vitas.  Because the court has already dismissed these counts as to all defendants who have moved to dismiss the Amended Complaint, see supra section IV.D.8.a-b, there do not appear to be any remaining claims against Vitas for the court to analyze.  Vitas's Motion to Dismiss (Doc. No. 79) is granted.

     E.    Appointment of Counsel

In addition to the pending Motions to Dismiss, the court has before it a Motion for Appointment of Counsel filed by Telkamp.  See Mot. for Appointment of Counsel (Doc. No. 49).  In that Motion, Telkamp suggests that the nature and complexity of her lawsuit warrant the appointment of counsel.  See id. at 1.  However, Telkamp does not detail what efforts, if any, she has made to secure retained counsel for her case.  The Second Circuit has made clear that, before an appointment is even considered, the indigent person must demonstrate that she is unable to obtain counsel on her own.  See Cooper v. A. Sargenti Co., 877 F.2d 170, 173 (2d Cir. 1989).  Therefore, Telkamp's Motion for Appointment of Counsel (Doc. No. 49) is denied without prejudice.  Any subsequent Motion for Appointment of Counsel should detail what efforts Telkamp has made to obtain counsel.

The court notes that many county bar associations in Connecticut run lawyer referral services.  For example, the New Haven County Bar Association conducts a lawyer referral service that is accessible both online and by phone at (203) 562-5750.  The New London County Bar Association also runs a lawyer referral service, accessible online at http://www.nlcba.org/lawyer-referral-service/.  Referral services such as these

may be able to connect Telkamp to a lawyer who would accept her case on a contingency fee or reduced fee basis.  Telkamp can also try calling law firms directly.

F.    Right to Replead and Extension of Time to Serve

Although the court has dismissed pursuant to Rule 12(b)(6) several of Telkamp's claims in this Ruling, the court grants Telkamp leave to replead her claims that have been dismissed within **21 days** from the entry of this Ruling.  However, the court advises Telkamp that Rule 8 of the Federal Rules of Civil Procedure require any "pleading that states a claim for relief" to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  Thus, any amended pleading filed by Telkamp should briefly recite the facts that, if true, could plausibly entitle her to the relief she seeks.

The court also exercises its discretion to grant Telkamp an extension of time in which to serve the defendants who have not waived service in this action, including the defendants who are being dismissed from this case pursuant to Rule 12(b)(5).  See Counter Terrorist Group U.S. v. New York Magazine, 374 F. App'x 233, 234 (2d Cir. 2010) ("Although a district court must grant an extension where good cause is shown, it may also grant a discretionary extension absent such showing."); Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007) (noting that "district courts have discretion to grant extensions even in the absence of good cause").  Although Telkamp has not established that she has good cause for failing to serve the defendants who have not waived service, the court has assessed the reasons Telkamp may have failed to effect service to date and the potential prejudice to all parties from granting an extension and, on the basis of this analysis, concludes that a brief extension of time to effect service is

55

warranted.  In particular, the court notes that all of the defendants who have moved to dismiss for failure of service are represented by counsel, and therefore appear to have actual notice of the suit against them, and Telkamp is a pro se litigant who resides in Texas but is prosecuting this case in Connecticut.

On the basis of the foregoing considerations, the court grants Telkamp an extension of **60 days** from the date of this Ruling in which to effect service on the defendants who have not waived service in this case or otherwise been served.  If Telkamp is able to serve within that time, and docket proof of service within 14 days of service, the defendants currently dismissed from this action pursuant to Rule 12(b)(5) will be reinstated.  However, Telkamp is advised that further extension of the time in which to effect service will not be forthcoming absent a showing of good cause for the delay.

## V.    CONCLUSION

For the foregoing reasons, Telkamp's Motions for Leave to File Sur-Reply Briefs (Doc. Nos. 78 & 87) are **GRANTED**.  Telkamp's Motion for Appointment of Counsel (Doc. No. 49) is **DENIED** without prejudice.

Vittorio Ferrero's Motion to Dismiss (Doc. No. 52) and Gail Ward Curland, Erin Dunning, and Genesis HealthCare, LLC's Motions to Dismiss (Doc. No. 67) are **GRANTED** pursuant to Rule 12(b)(5) for insufficient service of process, without prejudice to serve these defendants within 60 days.  If good service is made within 60 days, these Rule 12(b)(5) dismissals will be vacated upon docketing proof of service within 14 days thereof.  Vitas Healthcare Corp. Atlantic's Motion to Dismiss (Doc. No. 79) is also **GRANTED** pursuant to Rule 12(b)(6).

Kristy Davenport's Motion to Dismiss (Doc. No. 37) is **GRANTED IN PART** and **DENIED IN PART**.  Telkamp's claim of libel per se against Davenport is dismissed, but her remaining claims—for false imprisonment, assault, and intentional infliction of emotional distress—survive.  Laina Braasch's Motion to Dismiss (Doc. No. 37) is also **GRANTED IN PART** and **DENIED IN PART**.  Telkamp's claims of false imprisonment, libel per se, and assault against Braasch are dismissed, but her claim of intentional infliction of emotional distress survives.  Ashley Creswell's Motion to Dismiss (Doc. No. 70) is **GRANTED IN PART** and **DENIED IN PART**.  Telkamp's claim of libel per se against Creswell is dismissed, but her remaining claims—for false imprisonment, assault, and intentional infliction of emotional distress—survive.  Kim Trowbridge's Motion to Dismiss (Doc. No. 79) is **GRANTED IN PART** and **DENIED IN PART**.  Telkamp's claim of negligence against Trowbridge is dismissed, but her claim of intentional infliction of emotional distress survives.

Melissa Monte's Motion to Dismiss (Doc. No. 35) is **DENIED**.  Deirdre Cronin-Vorih's Motion to Dismiss (Doc. No. 35) is **DENIED**.  L+M Hospital's Motion to Dismiss (Doc. No. 37) is **DENIED**.  Groton Ambulance, Chester Kaniecki, and Paula Edwards's Motions to Dismiss (Doc. No. 63) are **DENIED**.  Tamara Martin-Linnard's Motion to Dismiss (Doc. No. 67) is **DENIED**.

To reiterate, the defendants and claims identified in the Amended Complaint that survive this Ruling are:

- All counts against defendants McCarthy and Banks,[29] which include Counts 3-4, Counts 7-8, and some portion of Counts 28-42;

---

[29] Defendants McCarthy and Banks have not moved to dismiss the Amended Complaint.

- Count 5 against defendant Groton Ambulance for false imprisonment;

- Count 5 and some portion of Counts 28-42 against defendant Kaniecki for false imprisonment and intentional infliction of emotional distress;

- Count 5 and some portion of Counts 28-42 against defendant Edwards for false imprisonment and intentional infliction of emotional distress;

- Count 6 against defendant L+M Hospital for false imprisonment;

- Some portion of Counts 9-10 and some portion of Counts 28-42 against defendant Martin-Linnard for slander per se and intentional infliction of emotional distress;

- Counts 11, 12, and some portion of Counts 28-42 against defendant Davenport for false imprisonment, assault, and intentional infliction of emotional distress;

- Counts 14, 15, and some portion of Counts 28-42 against defendant Creswell for false imprisonment, assault, and intentional infliction of emotional distress;

- Counts 17, 18, and some portion of Counts 28-42 against defendant Monte for false imprisonment, battery, and intentional infliction of emotional distress;

- Counts 19, 20, and some portion of Counts 28-42 against defendant Cronin-Vorih for false imprisonment, libel per se, and intentional infliction of emotional distress; and

- Some portion of Counts 28-42 against defendants Braasch and Trowbridge for intentional infliction of emotional distress.

**SO ORDERED**.

Dated at New Haven, Connecticut this 29th day of February 2016.

_/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge